JUDGE McMAHON

14 CV 300

Barry I. Levy (BL 2190)
David M. Grill (DG 1385)
Evan R. Schieber (ES 5422)
Brian L. Bank (BB 5595)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556
Telephone:   (516) 357-3000
Facsimile:   (516) 357-3333

*Counsel for Plaintiff Behzad Nehmadi a/k/a Ben Nehmadi*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BEHZAD NEHMADI a/k/a BEN NEHMADI,   Docket No.

                    Plaintiff,

        -against-

VIC LOTAN,

                    Defendant.
------------------------------------------------------------------X

RECEIVED JAN 16 2014 U.S.D.C. S.D.N.Y. CASHIERS

## COMPLAINT

Plaintiff, Behzad Nehmadi a/k/a Ben Nehmadi, by his attorneys, Rivkin Radler LLP, as and for his Complaint herein, alleges upon information and belief as follows:

### PRELIMINARY STATEMENT

1.    Plaintiff, Behzad Nehmadi a/k/a Ben Nehmadi ("Owner"), is the holder of a majority in interest in Horizon Properties, LLC (the "Company"), a New York limited liability company. In this action, Owner seeks an order vacating, annulling, and setting aside a purported Shotgun Notice (the "Shotgun Notice") by which Defendant Vic Lotan ("Lotan"), the sole remaining member of the Company, seemingly purports to offer to purchase a portion of Owner's membership interest in the Company.

1

2. The transaction contemplated by the Shotgun Notice violates the Company's governing documents in several respects, including its operating agreement (the "Operating Agreement"). The Operating Agreement requires that any sale or disposition of a membership interest must first be approved by the majority in interest of the members of the Company where, in the opinion of the Company's counsel, the disposition would result in the termination of the Company under Section 708 of the Internal Revenue Code of 1986, as amended (the "Code").

3. Here, the Company's counsel, after engaging the services of tax experts, has rendered its legal opinion that the transaction contemplated in the Shotgun Notice would, in fact, result in the termination of the Company.

4. As such, Owner, as the holder of a majority in interest in the Company, must approve the proposed transaction.

5. Owner has not approved the proposed transaction contemplated by the Shotgun Notice and is entitled to withhold his approval to the proposed transaction under the Operating Agreement.

6. The Shotgun Notice is also facially deficient in that it improperly contains an offer to purchase less than Owner's entire interest in the Company. The Operating Agreement, however, requires that to be valid, any Shotgun Notice must contain an offer to purchase the entire membership interests of all other members of the Company.

7. Despite having notice that the Owner, as the majority in interest of the Company, has refused to consent to the disposition contained in the Shotgun Notice, Lotan has refused to withdraw the Shotgun Notice, thereby necessitating this action. Indeed, pursuant to the Operating Agreement, any attempted disposition of membership interest in violation of the provisions of the Operating Agreement is null and void.

8. Thus, Lotan's issuance of the Shotgun Notice was an action taken unquestionably in excess of his authority and in derogation of Owner's rights under the Operating Agreement. Based on the grounds set forth in this Complaint, the Shotgun Notice must be vacated, annulled, and set aside, and Lotan preliminarily and permanently enjoined from enforcing the terms of the Shotgun Notice.

9. Lotan's unauthorized effort to pursue the transaction contemplated by the Shotgun Notice also violates multiple provisions of certain loan documents with UBS Real Estate Investments Inc. (the "UBS Loan") that prohibit changes in control in the borrowing entity (of which Horizon holds a 79.5 percent interest), as is intended by the Shotgun Notice.

10. Finally, upon information and belief, the issuance by Lotan of the Shotgun Notice is the product of bad faith and retaliation on the part of Lotan resulting from Lotan's numerous failed attempts to assert control of the sole asset of the Company, namely the building known as 137 East 25th Street, New York, New York (the "Building").

## PARTIES

11. At all times relevant hereto, Owner was and is a citizen and resident of the State of California.

12. At all times relevant hereto, Lotan was and is citizen and resident of Israel. Lotan also maintains a residence in the State of New York, County of New York.

## JURISDICTION AND VENUE

13. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

14. There is a complete diversity of citizenship between Owner and Lotan, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3

15. Venue is proper pursuant to 28 U.S.C. § 1391(a).

### FACTS RELEVANT TO ALL CLAIMS

16. In or about September 11, 1998, the Company was formed as a multi-member limited liability company to indirectly own and operate a majority interest in the Building, which is a multi-story commercial office building that has a market value in excess of approximately $30 million and annual revenues of approximately $3 million.

17. As of early 2004, there were four (4) Company members: (i) Owner held a 40.8793 percent membership interest; (ii) Lotan held a 44.3962 percent membership interest; (iii) Jeffrey Garfinkel ("Garfinkel") held an 8.8050 percent membership interest; and (iv) Arnold Mandell ("Mandell") held a 5.9195 percent membership.

18. In February of 2009, Owner acquired all right, title, and interest to Garfinkel's 8.8050 percent membership interest in the Company. In December of 2013, Owner acquired all right, title, and interest to Mandell's 5.9195 percent membership interest in the Company.

19. The transfer to Owner of Garfinkel's membership interest and Mandell's membership interest was effectuated with the written consent of the other members of the Company, including Lotan.

20. As a result, Owner presently holds a 55.6038 percent membership interest in the Company, which constitutes a majority of interest in the Company. Lotan, as the remaining member of the Company, holds a minority 44.3962 percent membership interest.

21. The Company is treated as a partnership for federal income tax treatment purposes.

22. The rights and obligations of the members of the Company are governed by the terms of the Operating Agreement.

I.      **Provisions Relevant to the Disposition of a Member's Membership Interest**

23.     The ability of a member of the Company to invoke the buy-sell procedure contained in the Operating Agreement and purchase the membership interests of the remaining members of the Company pursuant to a shotgun notice is specifically addressed in the Operating Agreement. The Operating Agreement contains strict requirements for serving a Shotgun Notice, which are conditions precedent to enforcing a Shotgun Notice. In particular, in Article VI, Section 6.2(c) of the Operating Agreement, it is made clear that a member desiring to issue a Shotgun Notice must offer to purchase the <u>entire</u> membership interest of all remaining members of the Company. Article VI, Section 6.2(c) states, in pertinent part:

> (1)     If at any time during the term of this agreement, a Member may notify the other Members in writing, that he, or they, as the case may be, is offering to purchase the entire Membership Interest of all the other Members. Such notice (the "Shotgun Notice") shall state the purchase price which the offeror ("Offeror") is willing to pay for the Membership Interest(s) of the Offeree ("Offeree"), and all the terms and conditions upon which such purchase price will be paid (the "Offeror Purchase Price").

> \*          \*          \*

> (2)     The Offeree shall then have the option, exercisable within the Exercise Period defined below to either:
>
>> A.      Accept the offer and sell his or their Membership Interest(s) to the Offeror; or
>>
>> B.      Purchase pro-rata to the electing Members the entire Membership Interest(s) of the Offeror at the price set forth in the Shotgun Notice.

24.     The Operating Agreement further makes clear that no sale or disposition of any membership interest is valid unless it is first approved by the holder of a majority in interest of the Company if the membership interest sought to be sold, exchanged, or disposed of would, in

5

the opinion of the Company's counsel, result in the termination of the Company under Section 708 of the Code. Article VI, Section 6.2(l) of the Operating Agreement states:

> Anything herein to the contrary notwithstanding, no sale or exchange of any Membership Interest or other disposition covered by this Article may be made except with the consent of a Majority in Interest, if the Membership Interests sought to be sold or exchanged or other disposition, would, in the opinion of counsel for the Company result in the termination of the Company under Section 708 of the Code.

25.   Article VI, Section 6.2(h) of the Operating Agreement states that "[a]ny consent required under Sections 6.1 or 6.2 hereof may be withheld for any reason whatsoever, or for no reason, whether or not such withholding of consent is reasonable."

26.   The Operating Agreement provides that any purported disposition in violation of the provisions contained in Article VI of the Operating Agreement is deemed null and void. The Operating Agreement at Article VI, Section 6.2(m) states: "Any attempted sale or other disposition of all or any part of a Membership Interest, except in accordance with the terms of this Article shall be null and void."

## II.   Lotan's Improper Attempt to Invoke the Purported "Shotgun Notice"

27.   On December 20, 2013, Lotan, purported to serve upon Owner a Shotgun Notice, ostensibly for the stated purpose of purchasing 55.1038 percent of Owner's membership interest – a percentage that is less than Owner's 55.6038 percent membership interest in the Company. Specifically, the Shotgun Notice calls for Owner to sell a 55.1038 percent interest in the Company for $10,075,729.00 or, conversely, to purchase Lotan's 44.3962 percent membership interest for $8,117,845.17.

28.   The Shotgun Notice, as drafted, is riddled with substantial irregularities and errors, and Lotan's attempt to enforce it deviates materially from the dictates of the Operating Agreement.

6

29. First, the Shotgun Notice failed to comply with the Operating Agreement's requirement that an offer made pursuant to the transfer provisions of the Operating Agreement be for the entire membership interest of the remaining members. Here, the Shotgun Notice purports to contain an offer to purchase less than Owner's entire 55.6038% membership interest and is, therefore non-compliant with the terms of the Operating Agreement.

30. In addition, the transaction proposed in the Shotgun Notice is null and void in that the consent requirements set forth in the Operating Agreement for the proposed transaction have not been meet. As dictated in the Operating Agreement, where a sale of a membership interest results in the termination of the Company under Section 708 of the Code, (i) consent of the majority in interest – in this case, Owner – must first be obtained before any such sale is consummated, and (ii) the majority in interest may withhold such consent for any reason whatsoever, whether or not reasonable.

31. By letter dated January 9, 2014, the Company's counsel, Goldberg Weprin Finkel Goldstein LLP, provided its legal opinion (the "Opinion") that the sale of either remaining members' membership interest in the Company pursuant to the Shotgun Notice would result in a termination of the Company as a partnership for U.S. federal income tax purposes under Section 708 of the Code.

32. Attached to the Opinion was a separate and independent legal opinion, dated January 7, 2014, issued by the tax practice group of the law firm of Troutman Sanders LLP, who specialize in tax matters, including tax consequences of transactions involving corporations, limited liability companies, and partnerships.

33. Since in the opinion of the Company's counsel the proposed transaction set forth in the Shotgun Notice would terminate the Company's status as a partnership for tax purposes

7

under Section 708 of the Code, the Operating Agreement requires that Lotan secure the approval of Owner, as the holder of the majority in interest in the Company.

34.  By letter dated January 10, 2014, Owner, as the holder of a majority in interest in the Company objected to the Shotgun notice as being violative of the Operating Agreement, set forth the reasons that the Shotgun Notice was violative of the Operating Agreement, and refused to grant consent to the sale proposed by the Shotgun Notice.

35.  Moreover, Owner objected to the Shotgun notice as the transaction proposed by Lotan in the Shotgun Notice would create multiple defaults under the UBS Loan, which encumbers the Building. As a member of the Company, Lotan is a fiduciary in a relationship founded on trust and confidence, and charged with a responsibility to preserve the Company's assets and to take no steps to harm the Company's interest.

36.  To date, Lotan has refused to withdraw the Shotgun Notice.

37.  Lotan contends that the time by which Owner must elect to either elect to sell 55.1038 percent of his membership interest to Lotan for $10,075,729.00 or, conversely, to purchase Lotan's 44.3962 percent membership interest for $8,117,845.17 is January 19, 2014, failing which Lotan proclaims that Owner will be irrevocably bound to sell 55.1038 percent of his membership interest in the Company to Lotan. Absent the injunctive relief sought by Owner in this Action, Lotan will be at liberty to continue to pursue the transaction contemplated in the Shotgun Notice to the detriment of Owner prior to a determination and adjudication of the bona fides of the Shotgun Notice. To safeguard Owner's unique rights as a member of the Company, the Court must preserve the status quo by tolling the periods contained in the Shotgun Notice and enjoining Lotan from taking any steps in furtherance of the purported Shotgun Notice pending a final determination in this matter.

## AS AND FOR A FIRST CAUSE OF ACTION
**Declaratory Relief under 28 U.S.C. § 2201**

38.  Owner repeats and realleges the foregoing allegations as if fully set forth at length herein.

39.  This action presents a controversy between Owner and Lotan that is real, definite, and involves substantial legal interests.

40.  Based on the foregoing, a declaration is required that the Shotgun Notice is null and void because the transaction that it purports to adopt would, in the opinion of the Company's counsel, result in the termination of the Company under Section 708 of the Code and is being sought without the approval of Owner, as majority in in interest.

41.  As such, the Shotgun Notice and the transaction it contemplates is in violation of the Operating Agreement and must be annulled, vacated, and set aside.

42.  There is no adequate remedy at law.

## AS AND FOR A SECOND CAUSE OF ACTION
**Declaratory Relief under 28 U.S.C. § 2201**

43.  Plaintiff repeats and realleges the foregoing allegations as if fully set forth at length herein.

44.  This action presents a controversy between Plaintiff and Defendants that is real, definite, and involves substantial legal interests.

45.  Based on the foregoing, a declaration is required that the Shotgun Notice is null and void because it violates the Operating Agreement which expressly requires that any offer contained in a shotgun notice be for the entire membership interest of the other members. The Shotgun Notice contains an offer to purchase less than the entire membership interest of Owner.

46. As such, the Shotgun Notice and the transaction is contemplates violates the Operating Agreement and must be annulled, vacated, and set aside.

47. There is no adequate remedy at law.

### AS AND FOR A THIRD CAUSE OF ACTION
### Injunctive Relief

48. Plaintiff repeats and realleges the foregoing allegations as if fully set forth at length herein.

49. Owner has demonstrated a likelihood of success on the merits of this action and has shown that he now suffers and will continue to suffer irreparable harm absent the issuance of an injunction prohibiting the enforcement of the Shotgun Notice. The equities also tip decidedly in favor of Plaintiff.

50. As such, the Court should grant a preliminary and permanent injunction preventing the enforcement of the Shotgun Notice.

51. There is no adequate remedy at law.

### AS AND FOR A FOURTH CAUSE OF ACTION
### Breach of Fiduciary Duty

52. Plaintiff repeats and realleges the foregoing allegations as if fully set forth at length herein.

53. Pursuant to Section 8.2(a)(ii) of the loan agreement for the UBS Loan, transfers of interest, direct or indirect, that result in a change of control of the borrower are prohibited.

54. Lotan's attempt to acquire Owner's controlling interest in the Company would precipitate a default under the UBS Loan and is a gross violation of the precept of undiluted trust at the core of Lotan's responsibility as a fiduciary of Owner.

55.     As a result of the foregoing, Owner is entitled to an award of damages in an amount to be determined at trial.

### AS AND FOR A FIFTH CAUSE OF ACTION
#### Breach of Fiduciary Duty

56.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth at length herein.

57.     The Shotgun Notice is the product of bad faith and retaliation against the interests of Owner, which bears no legitimate relationship to the welfare of the Company as a whole.

58.     Personal motives and malicious and vindictive aims of Lotan underlie the determination to issue the Shotgun Notice.

59.     The Owner is entitled to an award of damages, in an amount not presently ascertainable, incidental to the wrongful and ultra vires actions of Lotan.

**WHEREFORE**, Plaintiff respectfully requests that an Order and Judgment be entered herein:

(1)     On the First Cause of Action, annulling, vacating, and setting aside the Shotgun Notice and the transaction that it purports to propose;

(2)     On the Second Cause of Action, annulling, vacating, and setting aside the Shotgun Notice and the transaction that it purports to propose;

(3)     On the Third Cause of Action, preliminarily and permanently enjoining Defendant from enforcing the Shotgun Notice;

(4)     On the Fourth Cause of Action, awarding damages, in an amount to be determined at trial;

(5)     On the Fifth Cause of Action, awarding damages in an amount not presently ascertainable, incidental to the wrongful and ultra vires actions of the Defendant;

(6)     Awarding attorney's fees, costs, and interest; and

(7)     For such other and further relief as this Court deems just and proper.

Dated: New York, New York
       January 15, 2014

                RIVKIN RADLER LLP
                *Attorneys for Plaintiff Behzad Nehmadi a/k/a Ben Nehmadi*

By: _____
        Barry I. Levy (BL 2190)
        David M. Grill (DG 1385)
        Evan R. Schieber (ES 5422)
        Brian L. Bank (BB 5595)
555 Madison Avenue
New York, New York 11556-0926
Telephone:   (212) 455-9555
Facsimile:   (212) 687-9044

2904552 v1

12